UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELECTRIFIED DISCOUNTERS,      :
INC.,                         :
                              :
      Plaintiff,              :
                              :
      v.                      :     CASE NO.  3:13cv1332(RNC)
                              :
MI TECHNOLOGIES, INC.,        :
et al.,                       :
                              :
      Defendants.             :

RULING ON DEFENDANT'S MOTION TO COMPEL

        Pending  before  the  court  is  the  defendant  MI  Technologies'

motion  to  compel  plaintiff  Electrified  Discounters'  responses  to

discovery.[1]  (Doc. #92.)   The motion is granted.

I.    Factual Background

        This  is  a  trademark  infringement  case.    The  parties  are

competitors  who  sell  replacement  lamps  for  rear  projection

televisions  and  front  projectors  via  online  marketplaces,  such  as

Amazon.com.    In  September  2013,  the  plaintiff  Electrified

Discounters,  Inc.  ("Electrified")  commenced  this  action  against

defendants  MI  Technologies  and  its  principals,  Amir  Tafreshi  and

Ali  Irani-Tehrani  ("MI  Technologies"),  alleging  trademark

infringement,  false  designation  of  origin,  trademark  dilution  and

violation  of  the  Connecticut  Unfair  Trade  Practices  Act.    (Doc.

#30,  Pl's  Amended  Compl.)   Electrified  alleges  that  its  generic

replacement  lamps  are  made  to  order  by  suppliers  based  on

_____

        [1]U.S.  District  Judge  Robert  N.  Chatigny  referred  the  case  to
the  undersigned  to  resolve  discovery  disputes.   (Doc.  #81.)

specifications it provides and that MI Technologies sells counterfeit products purporting to be plaintiff's products in order to capitalize on plaintiff's trademarks. (Doc. #30, Pl's Amended Compl. ¶¶19, 22.) Plaintiff also alleges that defendant improperly uses multiple seller accounts on Amazon to compete with it. (Doc. #30, Pl's Amended Compl. ¶23.)

In turn, MI Technologies asserted counterclaims against Electrified, seeking cancellation of the registration of the "ELECTRIFIED LAMPS" mark and a declaratory judgment that Electrified's trademarks are not protectable. (Doc. #46.) MI Technologies also commenced an action against Electrified and Philip Krass, Larry Krass, and James Sonet ("Electrified"). MI Technologies alleges that the "defendants have engaged in a systematic, elaborate scheme to boost Electrified['s] sales of generic replacement lamps over that of competitors, including Plaintiff, over the years." (MI Technologies Compl. ¶17). This scheme involved: (1) falsely misrepresenting Electrified as the manufacturer of the replacement lamp products it sells; (2) using Uniform Product Codes (UPC) assigned to "legitimate manufacturers to create prohibited duplicate listings" on online marketplaces, such as Amazon.com; and (3) falsely designating the manufacturing origin of its products on product packaging. (Id.) Additionally, MI Technologies alleges that the defendants interfered with its relationship with Amazon.com by falsely reporting policy violations

and providing negative feedback. (MI Technologies Compl. ¶38.)  The two cases were consolidated.

II.  <u>Procedural Background</u>

Defendant MI Technologies served the discovery requests at issue in June 2014. (Doc. #94, Exs. A, B.)  In September 2014, the defendant submitted a prefiling submission to the court.  After review, the court requested full briefing due to the volume and complexity of the discovery requests.  (Doc. #84.)  In January 2015, the defendant MI Technologies filed the instant motion to compel.  (Doc. #92.)  The plaintiff Electrified filed its opposition on February 13, 2015 and the defendant replied on February 27, 2015.  (Doc. ##98, 111.)  On April 13, 2015, the defendant sought and was granted leave to file a surreply.  (Doc. ##131, 133.)  The court heard lengthy oral argument on April 16, 2015.  (Doc. #136.)

III. <u>Discussion</u>

The defendant moves to compel responses to a number of discovery requests.  Before addressing the specific requests, the court considers defendant's criticism of plaintiff's failure to institute a timely litigation hold and its careless and indifferent production efforts after the duty to preserve arose.  (Doc. #93 at 2.)  After reviewing the deposition testimony of Electrified's witnesses, the court agrees that the defendant's concern is well-founded.  <u>See</u> doc. #133.

A.   <u>Duty to Preserve</u>

Defendant MI Technologies first questions the plaintiff's "retention and preservation of documents in anticipation of litigation." (Doc. #93 at 2.) Defendant states that plaintiff anticipated filing a lawsuit against defendant as of 2011 but that plaintiff's attorney did not counsel his client regarding its duty to retain relevant information until two years later. (Doc. #93 at 2; doc. #94, Liou Decl. ¶¶5-6, Ex. H.) During oral argument, Attorney Ruszycyk, plaintiff's counsel, conceded that he did not tell his client of the need to preserve documents until the plaintiff filed this lawsuit in 2013. (Doc. #94, Liou Decl. ¶6; doc. #138, tr. 4/16/15 at 22.) He did not provide his client a written document retention notice regarding its duty to preserve.[2] (Doc. #138, tr. 4/16/15 at 21.) Plaintiff's co-counsel, Attorney Blyksdal, said that his law firm, Gordon & Rees, sent plaintiff a letter regarding the duty to preserve when the firm was later retained in December 2013. (Doc. #138, tr. 4/16/15 at 20.)

Defendant points to deposition testimony that documents are not being retained. In March 2015, Electrified's president, Philip Krass ("Krass") testified in his deposition that he routinely deletes emails based on their age when his mailbox becomes full.[3]

---

[2]It does not appear that Attorney Ruszcyk has ever given his client a preservation letter. (Doc. #138, tr. 4/16/15 at 21.)

[3]The deposition took place after the plaintiff (1) served its discovery responses and (2) filed its opposition to the motion.

(Doc. #134, Ex. 2, Krass Dep. 263:17-23, 264:13.)  Krass further
stated that he deletes emails about once a month.  (Doc. #134, Ex.
2, Krass Dep. 265:12-18.)  He continued to delete emails during
this litigation.  On the day before his deposition, he deleted
approximately 1000 emails.  (Doc. #134, Ex. 2, Krass Dep. 265:7-
11.)  Other records also were destroyed.  Electrified responded to
defendant's request for Electrified's lamp sales that "[a]s part of
its routine business practices, Electrified discards its records of
lamps sales after approximately one year following payment."[4]  See
Electrified's Response to Production Request 7.

The duty to preserve evidence is "well established."  Pension
Comm. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d
456, 466 (S.D.N.Y. 2010), abrogated on other grounds by Chin v.
Port Auth. of New York & New Jersey, 685 F.3d 135 (2d Cir. 2012).
A party is under an obligation to preserve evidence when it "has
notice that the evidence is relevant to litigation" or when it

---

During oral argument, plaintiff's attorneys stated that they were
unaware of Krass's emails until his deposition.  (Doc. #138, tr.
4/16/15 at 27.)

[4]Confusingly, during his deposition, Krass denied that
Electrified discarded sales records.  He testified in pertinent
part as follows:
    Q.   [D]o you discard records of lamp sales after one year?
    A.   What do you mean? Discard? We don't discard any of the
       records.
    Q.   You keep all of the records, right?
    A.   In Quickbooks, yes.
(Doc. #134, Krass Dep. 257:24-258:8.)  Another employee, Linda
Miller, also testified that Electrified maintains all of its sales
records.  (Doc. #134, Ex. 3, Miller Dep. 14:19-21.)

"should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). "The duty to preserve attache[s] at the time that litigation was reasonably anticipated." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2013). "The duty to preserve extends to those employees likely to have relevant information, who are 'key players' in the case." Nicholson v. Board of Trustees for the Connecticut State University System, No. 3:08cv1250(WWE), 2011 WL 4072685, at *4 (D. Conn. Sept. 12, 2011) (quoting Zubulake, 220 F.R.D. at 218). Once a party reasonably anticipates litigation, it "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake, 220 F.R.D. at 218. "[T]he duty to preserve means what it says" and "a failure to preserve records — paper or electronic — and to search in the right places for those records, will inevitably result in the spoliation of evidence." Pension Plan, 685 F. Supp.2d at 462. "Responsibility for adherence to the duty to preserve lies not only with the parties but also, to a significant extent, with their counsel." Casale v. Kelly, 710 F. Supp. 2d 347, 365 (S.D.N.Y. 2010).

This cannot continue. Pending the final disposition of all claims in this action, plaintiff Electrified is ordered to preserve all documents, electronically-stored information, and/or tangible things that might be relevant to this subject matter or reasonably

6

calculated to lead to the discovery of admissible evidence in this action.

B.    Search for and Production of Responsive Information

Defendant MI Technologies also doubts the plaintiff's production efforts.  "A party's discovery obligations do not end with the implementation of a 'litigation hold' — to the contrary, that's only the beginning.  Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).  "Proper communication between a party and [its] lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party."  Id.

The defendant asserts that plaintiff failed to conduct an adequate search for responsive documents.  In support, defendant points to plaintiff's responses to requests for communications with manufacturers regarding sales, quality and product specifications. Plaintiff Electrified -- an e-commerce business -- responded that no emails were located "despite a diligent search."  See Electrified's Response to Production Requests 8, 40, 41, 51.  To further illustrate the point, defendant says plaintiff produced only 1 email in response to defendant's discovery requests.  (Doc. #93 at 11.)  In stark contrast to these responses, plaintiff's

7

president Krass testified in his deposition that he regularly communicates with suppliers via email and maintains computer folders of email correspondence with suppliers. He did not search those emails for responsive documents. (Doc. #134, Ex. 2, Krass Dep. at 279:7-8.) James Sonet, Electrified's vice president, also testified that he communicates with Electrified's suppliers via email. (Doc. #133 at 5.) Plaintiff's attorneys stated during oral argument that they did not know about plaintiff's emails until these depositions in March 2015 - after plaintiff denied their existence in its discovery responses and filed its opposition to this motion. (Doc. #138, tr. 4/16/15 at 27-28.) In light of deposition testimony by Electrified's witnesses about its electronic records, plaintiff's counsel told the court that he is "evaluating" whether to image the plaintiff's hard drives so counsel could assist with the search for responsive emails and documents. (Doc. #138, tr. 4/16/15 at 32.)

There is more. Defendant requested plaintiff's records of its inventory, sales and quality measures. Plaintiff Electrified responded that it had no such records. See, e.g., Electrified's Response to Production Requests 6, 7, 18, 22, 23, 30, 33. In opposition to this motion, Electrified went so far as to state that "it does not maintain electronic databases of records." (Doc. #98 at 2.) Deposition testimony was to the contrary. Electrified employee James Eustace testified that Electrified uses a Quickbooks program, which contains detailed inventory and sales records dating

8

back to 2006.[5]   (Doc. #131 at 6.)   Krass acknowledged that the
Quickbook database contains inventory and sales information. (Doc.
#134, Ex. 2, Krass Dep. 257:8-20.)

        A party answering discovery requests "has an affirmative duty
to furnish any and all information available to the party."  7
Moore et al., Moore's Federal Practice § 33-102[1], at 33-73 (3rd
ed. 2014); Fed. R. Civ. P. 34(a)(1) (responding party must produce
responsive documents within its "possession, custody or control").
In addition, a party is under a duty to supplement its responses in
a timely manner if it "learns that in some material respect the
disclosure or response is incomplete or incorrect." Fed. R. Civ.
P. 26(e)(1)(A).  The record in this case reveals that no search,
much less a "diligent one," was made of the plaintiff's
electronically stored information.    During oral argument,
plaintiff's counsel agreed that plaintiff would serve supplemental
responses. (Doc. #138, tr. 4/16/15 at 54.)

        Electrified must provide its counsel with access to its
emails.  It also shall image its sources of electronically stored
information ("ESI"), including its hard drives and QuickBook files.
See Ameriwood Indus., Inc. v. Liberman, No. 4:06CV524, 2006 WL
3825291 at *4 (E.D. Mo. Dec. 27, 2006) (discrepancies or
inconsistencies in a responding party's discovery responses can
warrant a court order to create and examine a mirror image of a

_____

        [5]Plaintiff's attorneys stated during oral argument that they
were unaware of the plaintiff's QuickBooks program until it was
discussed during depositions.  (Doc. #138, tr. 4/16/15 at 54.)

hard drive); Genworth Financial Wealth Management, Inc. v. McMullan, 267 F.R.D. 443, 448 (D. Conn. 2010)(granting a motion to compel forensic imaging to be performed by a neutral court-appointed expert).  Plaintiff and counsel shall examine the records, supplement plaintiff's responses, provide defendant all responsive non-privileged documents and information, and provide a sworn statement that after a diligent search, all responsive discovery has have been produced.

    C.  Discovery Requests at Issue

    Twenty discovery requests are in dispute.  The court rules as follows[6]:

    1.  Interrogatory 2 requests information concerning plaintiff's contention that it "maintains strict quality control standards for all of its products" and that its "television projector lamps are of proprietary design."  The request also seeks identification of documents and evidence upon which plaintiff might rely in support of these contentions.  Plaintiff Electrified admitted that it "has specific requirements" but it did not disclose them.[7]  (Doc. #93 at 6, 9.)  Electrified also said it was

---

[6]For consistency, the court's ruling follows the order in which the parties briefed and argued the requests.

[7]The plaintiff provided its response to this request and others "without waiving" its objections.  Although this is a widespread practice, it leaves the requesting party uncertain as to whether the opposing party has fully answered its request and, importantly, is not contemplated by the Federal Rules of Civil Procedure.  As observed by Professor Moore, "[i]f the responding party both answers and objects to the interrogatory at the same time, the objection may be deemed waived, and the answer, if

"conducting a search for email communications concerning negotiations of [its] specifications" but did not produce any emails. Plaintiff's president Krass testified in his deposition that he maintains folders of emails containing plaintiff's communications with suppliers and that he did not search the folders for responsive documents. (Doc. #134, Ex. 2, Krass Dep. at 279:7-8.) Plaintiff's response is inadequate. (Doc. #138, tr. 4/16/15 at 22.) The motion to compel is granted. The plaintiff must provide a full description of its manufacturing specifications and identify all documents that support its contention, including documents in Krass's email folders. Responsive emails should be produced in native format. (Doc. #138, tr. 4/16/15 at 25-26.)

2. Request for Production 22 seeks documents to support plaintiff's claim that it manufactures its products. Request for Production 23 seeks documents relating to plaintiff's quality control measures. As to both requests, plaintiff responded that it "performs regular quality checks on its products but does not maintain records of those checks." The plaintiff must search and

---

responsive, will stand." 7 James Wm. Moore et al., Moore's Federal Practice § 33.174[1], at p. 33-105 (3rd ed. 2014). A proposed amendment to the Federal Rules of Civil Procedure addresses this situation as it pertains to requests for production. The proposed amendment to Rule 34(b)(2)(C) requires that an objection "state whether any responsive materials are being withheld on the basis of that objection." According to the Committee Note, the amendment is intended to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."
http://www.uscourts.gov/RulesAndPolicies/rules/pending-rules.aspx

produce responsive ESI.  The motion to compel as to Production Requests 22 and 23 is granted.

3.  Request for Production 40 seeks communications with plaintiff's manufacturers, including communications regarding four "affirmations" from Chinese manufacturers that plaintiff submitted in response to this motion.  Request for Production 41 seeks plaintiff's contracts, purchase orders and agreements with manufacturers.  Both production requests are limited to the past 5 years.  (Doc. #93 at 12.)  Request for Production 51 seeks documents identifying plaintiff's manufacturing "specifications." To the extent that the plaintiff objects on the grounds that the requests are burdensome, the objection is overruled.  The court is not persuaded that defendant's requests demand documents that are unduly burdensome to produce.  The court also does not find that the requests are overly broad or cumulative.  The motion to compel is granted.  Plaintiff shall search all sources of potentially relevant information, including the emails of all Electrified employees who communicate with manufacturers.

4.  Request for Production 6 seeks the plaintiff's products. In response, plaintiff stated that "it is not the practice of Electrified to maintain an inventory list." (Doc. #93 at 18.)  See also doc. #98, Krass Decl. ¶8 ("Electrified does not maintain an inventory list of products it offers for sale at any given time.") Plaintiff further responded that "an inventory of lamps sold by Electrified is available on Amazon" and produced a 5000 page

document that contained 53,000 Amazon listings.  (Doc. #93 at 18.)
During his deposition, Plaintiff's president stated that he has
access to inventory.   He testified that plaintiff's entire
inventory is available in Quickbooks and is linked to products
offered on Amazon through a software program called T-Hub.  During
oral argument, defense counsel narrowed its request to a one-day
snap shot of the plaintiff's inventory for the past 5 years,
produced in native format. (Doc. #138, tr. 4/16/15 at 46-47.)  The
request is granted.

  5.   Request for Production 7 seeks every brand name lamp
and/or generic replacement lamp plaintiff sold in the past 5 years.
Plaintiff produced some documents.   It said that online
marketplaces would have plaintiff's sales records but that "it
would be unduly burdensome for Electrified to obtain each and every
record of each and every sale."  Electrified further stated that
"[a]s part of its routine business practices, Electrified discards
its records of lamp sales after approximately one year following
payment." However, Krass and other Electrified witnesses testified
that Electrified maintains detailed inventory and sales records in
Quickbooks and that Electrified has years of records. (Doc. #131 at
7.)  The motion to compel is granted.  The plaintiff shall produce
its sales records for the past five years in native format.

  6.   Request for Production 16 seeks documents relating to the
plaintiff's purchase of Uniform Product Codes (UPCs).   The
plaintiff produced certificates of authenticity and indicated that

it would make supplemental production.  (Doc. #98 at 11.)  The motion to compel is granted.  The plaintiff shall conduct a thorough, good faith search - including a search of its electronically stored information - and provide a supplemental response.  If the documents are available in electronic form, plaintiff shall provide them in native format.

7.  Request for Production 17 seeks plaintiff's Amazon product pages.  The plaintiff objected that the request was vague, ambiguous, overly broad and unduly burdensome.  It is not.  The plaintiff also said it had complied with the request but defendant explained that the reports plaintiff produced did not provide the Uniform Product Code or the URLs for the product pages.  (Doc. #93 at 21.)  During oral argument, defendant narrowed its request to the "one day snapshot" with the T-Hub link it previously requested in response to production request 6.  (Doc. #138, tr. 4/16/15 at 60.)  The motion to compel is granted.

8.  Request for Production 18 seeks documents sufficient to identify each of plaintiff's product detail pages on marketplace websites other than Amazon.  In opposition, the plaintiff says that the defendant has not sufficiently shown "any impropriety with respect to the vast majority of [plaintiff's] product listings" and that defendant "must be required to articulate a clearer explanation of its suspicion, pointing to specific product listings on specific websites" before plaintiff is required to respond.  (Doc. #98 at 7, 8)  The plaintiff's argument is unavailing.

14

"Because an adjudication on the merits normally comes only after discovery, it is no objection to a[] [discovery request] that it relates to a defense or claim which is insufficient in law." Kimbro v. I.C. System, Inc., No. 3:01CV1676(DJS)(TPS), 2002 WL 1816820, *1 (D. Conn. July 22, 2002).  The plaintiff also asserts that "much of the information that [defendant] seeks simply does not exist – i.e., a listing of every single product that Electrified has ever listed for sale in any online forum, along with the applicable UPCs, part number, and manufacturer."  (Doc. #98 at 7.)  As indicated, the plaintiff has not conducted a search of its electronically stored information.  The motion to compel is granted.  If the documents are available in electronic form, the plaintiff shall provide the product pages in native electronic format.

9.   Request for Production 8 seeks documents sufficient to identify each of the replacement lamps that plaintiff claims to have manufactured in the past 5 years.  The plaintiff did not object to the request and concedes that it has used the term "manufactured by." (Doc. #98 at 12; doc. #138, tr. 4/16/15 at 67.) During oral argument, defendant narrowed its request to a sworn statement by plaintiff that "all its products in [its] inventory on each of the dates for which [it is] supplying [] an inventory list" (to be provided pursuant to request for production 6) "were advertised with the claim that the products are 'manufactured by' Electrified.  (Doc. #138, tr. 4/16/15 at 66-67.)  The motion to

15

compel is granted.

10. Request for Production 30 seeks documents regarding plaintiff's sales of generic replacement lamps under or using the PHILIPS mark for the past 5 years. Request for Production 33 seeks documents regarding the plaintiff's revenues, costs and profits from these sales. In response, the plaintiff only produced "documents relating to its dispute with Philips relating to its alleged sale of counterfeit Philips products." It stated that "[n]o other documents exist" and that "it does not maintain records of sales by brand to the level of detail sought." (Doc. #93 at 26.) During oral argument, plaintiff also raised a relevance objection, an objection it did not assert in its discovery responses. (Doc. #138, tr. 4/16/15 at 75.) The objection is overruled. See Kimbro v. I.C. System, Inc., No. 3:01 CV 1676(DJS)(TPS), 2002 WL 1816820, *1 (D. Conn. July 22, 2002) (a party "is not free to raise in its brief — almost as an afterthought — entirely new objections which it did not assert earlier.") Plaintiff has not conducted a search of its electronically stored information in response to this request.[8] The motion to compel is granted.

11. Request for Production 52 seeks documents concerning plaintiff's claims of "lost sales, damaged reputation and

---

[8]Krass and other Electrified witnesses testified that the plaintiff's Quickbook program can be searched for "Philips-compatible" products. (Doc. #133 at 9-10.) Krass also testified that he maintains a folder of emails in Microsoft Outlook labeled "Phillips." (Doc. #134, Ex. 2, Krass Dep. at 267:13-25.)

illegitimate warranty claims" from buyers of defendant's alleged counterfeit products.  Plaintiff's counsel stated during oral argument that "there may be additional information out there" and that he "expect[ed] to have a supplemental production to some extent shortly."  (Doc. #138, tr. 4/16/15 at 84.) The motion to compel is granted.

12.  Requests for Production 56 - 59 seek the plaintiff's financial information.  As indicated, plaintiff's QuickBooks program contains detailed sales and financial information.  As an example, contrary to its response to request 59 that plaintiff "does not maintain documents that track the monthly average retail price," and that it "has not located any other documents in its possession, custody, or control from which its average monthly retail prices can be derived," Krass testified that the plaintiff indeed has documents from which it could determine this information.  (Doc. #133 at 11-12.)  The motion to compel is granted.

13.  Request for Production 71 seeks all documents upon which plaintiff's damages claims are based.  In response, the plaintiff states that it will supplement its response.  The motion to compel is granted.  The plaintiff shall produce all documents on which its damages claims are based, including documents relied upon by plaintiff's damages expert.

D.   Rule 30(b)(6) Deposition

During oral argument, defendant requested that it be permitted

to reopen the Rule 30(b)(6) deposition after plaintiff's document production.  The plaintiff does not object.  (Doc. #138, tr. 4/16/15 at 86.)  The request is granted.

E.   Attorney's Fees

As a final matter, defendant stated during oral argument that it requests fees in connection with this motion.[9]  (Doc. #138, tr. 4/16/15 at 85.)  Plaintiff asked to brief the defendant's entitlement to fees.  (Doc. #138, tr. 4/16/15 at 88-89.)

Fed. R. Civ. P. 37(a)(5) provides that, if (1) a district court grants a Rule 37(a) motion to compel discovery or disclosure, or (2) disclosure or the requested discovery is provided after the motion was filed,

> the court must, after giving an opportunity to be heard,
> require the party or deponent whose conduct necessitated
> the motion, the party or attorney advising that conduct,
> or both to pay the movant's reasonable expenses incurred
> in making the motion, including attorney's fees.

Rule 37(a)(5)(A).  However, a court must not order payment if: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The plaintiff is ordered to show cause by June 2, 2015 why the

---

[9]Defendant did not request an award of attorney's fees in its motion to compel.  In its surreply filed before oral argument, the defendant stated that it "intends to request sanctions seeking, among other things, attorneys' fees" incurred in the making of its motion.  (Doc. #133 at 2.)

court should not award defendant attorney's fees incurred in the making of the motion to compel pursuant to Rule 37(a)(5).

IV.  Conclusion

For all these reasons, the defendant's motion to compel (doc. #92) is granted.  Pursuant to D. Conn. L. Civ. R. 37(d), plaintiff's compliance is due within 14 days of this order.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and Rule 72.2 of the Local Rules for Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Hartford, Connecticut this 19th day of May, 2015.

```
_____/s/_____
Donna F. Martinez
United States Magistrate Judge
```